## THE CHARLESTOWN BRANCH RAIL ROAD COMPANY vs. COUNTY COMMISSIONERS OF MIDDLESEX.

The period of three years " from the time of taking " land for a rail road, within which, by Rev. Sts. c. 39, § 58, application must be made to county commissioners to estimate the damages for such taking, is to be computed from the filing of the location of the road, as required by § 75 of the same chapter.

A rail road corporation, after locating its road over a wharf, more than sixty feet, and filing the location with the county commissioners, agreed with the owners of the wharf to extend the road sixty feet on and over the same before a certain day, and the owners, in consideration thereof, agreed not to demand any damages for such extension : The road was made according to the location that was filed previously to such agreement. *Held,* that this was not an agreement of the corporation not to extend their road more than sixty feet over the wharf, and that the owners of the wharf were not thereby entitled to apply, after three years from the filing of the location, for an estimate of the damages caused by an extension of the road more than sixty feet over the wharf.

PETITION for a writ of certiorari to bring up the record of the county commissioners concerning the allowance of damages to Mary Harris and another, owners of Harris's Wharf. The following facts appeared at the hearing :

The petitioners were incorporated by an act passed on the 9th of April 1836, (*St.* 1836, *c.* 187,) with authority to locate and construct a rail road on a line therein described ; and by the third section of said act, it was provided that if the location of said road should not be filed according to law, (that is, within one year,) or if said road should not be completed on or before the 1st of January 1838, said act of incorporation should be void. By an act passed on the 27th of March 1837, (*St.* 1837, *c.* 94,) the time limited in the former act, for the filing of the location of said road, was extended, so as to authorize the petitioners to file the same on or before the 1st of January 1839, and the time for the completion of said road was extended to the 1st of January 1840. By *St.* 1839, *c.* 126, the time for completing said road was extended to January 1st 1841.

The petitioners filed with the county commissioners the last location of said road over and across Harris's Wharf, on the 20th of December 1838, and began the making of the road over said wharf in May 1840. Mary Harris and others, owners of said wharf, made a written application to said commissioners to

estimate the damages caused by the taking of said wharf for said road; which application was filed on the 29th of March 1842. At the hearing of said application, the following agreement was read to the commissioners by the applicants' counsel:

" Memorandum of agreement made this 26th day of February 1840, by and between the Charlestown Branch Rail Road Company and Richard D. Harris, acting for himself and owners of Harris's Wharf.

" 1st. In consideration of the agreement herein contained and to be kept and performed by the owners of said wharf, the said corporation promises and engages to extend its rail road across the dock between Gray's and said Harris's Wharf, and sixty feet over and on said Harris's Wharf estate, from the southwesterly line thereof, in the present direction of said rail road, to be located twenty five feet wide, on or before the 1st day of June next.

" 2d. And in consideration of the above, the owners of said Harris's Wharf do hereby agree not to demand against said corporation any damage or compensation on account of its extending, locating, making and maintaining its road as above described, and hereby release all such damages and demands, ex cepting however the claims that may be made by the occupants of said wharf for the expense of removing merchandize or other materials for or on account of said rail road company.

" 3d. It is further understood and agreed, by and between the parties to this agreement, that the owners of said Harris's Wharf do not consent to have said Charlestown Branch Rail Road extended, located, made and maintained, on and over their said estate, more than sixty feet from the southwesterly line thereof, as aforesaid; on the contrary, that they the said owners do object to any further extension of said rail road, on account of the injury which they allege said estate would suffer from such extension, and that said owners will claim all reasonable compensation for damage, that may be occasioned thereby.

" 4th. It is also understood and agreed, by the parties aforesaid, that said owners of Harris's Wharf reserve to them-

selves the right to pass over and across said sixty feet of rail road, and all other rights not hereinbefore surrendered.

"Charlestown Branch Rail Road Company,
by Charles Thompson, President.
"Richard D. Harris, for self and owners of
Harris's Wharf."

The said applicants' counsel, at the same time, read to said commissioners a letter from the proprietors of said wharf to the agent of the said rail road company, dated May 13th 1840, forbidding the company to extend their rail road across said wharf beyond the point mentioned in the foregoing agreement, and giving notice that they should claim full damages for all the injury which they might sustain from any act of the said company or its agents: Also a letter from said proprietors to the president of said company, dated June 26th 1841, stating that the rail road was extended, about a year before, across said wharf, whereby the estate was much injured, and that said proprietors at that time made known to the agent of the company that they should demand remuneration for the land taken and the injury sustained; wherefore they requested to know whether the president and directors "had fixed upon the amount to which they considered said proprietors entitled, or what course they purposed taking in relation to this claim." The answer of said president to this last letter, was also read to said commissioners. It was dated June 29th 1841, and informed said proprietors that the directors of the rail road corporation had not taken any action upon the subject matter of said proprietors' last letter.

The counsel for the rail road company moved the county commissioners to dismiss the application of the proprietors of said wharf for damages, because more than three years had elapsed, when said application was made, after the filing of the location of the rail road over said wharf, and the taking of said wharf and land by said company. The commissioners overruled this motion, and on the 1st Tuesday of September 1842 awarded damages to the said Mary Harris and another, pursuant to their application.

*J. Dana,* for the petitioners. By the Rev. Sts. *c.* 39, § 58, " no application to the commissioners, to estimate damages for land or property to be taken " for a rail road, " shall be sustained unless made within three years from the time of taking the same." The petitioners understand that the filing of the location is the taking meant by this 58th section. The filing of the location is notice to every person, over whose land the rail road passes, that his land is taken. On any other construction, parol evidence will always be required to show when the land was taken. As soon as the location is filed, either the corporation or the land owner may apply to the commissioners to appraise damages. *Harrington* v. *County Commissioners,* 22 Pick. 263. *Hallock* v. *County of Franklin,* 2 Met. 558. By § 56, the corporation is liable to pay the damages caused by laying out and making the road. " Laying out " here means the same that is meant by " taking " in § 58. The decision in *Heard* v. *Proprietors of Middlesex Canal,* 5 Met. 81, is applicable to the case at bar.

*Greenleaf & Welch,* for the respondents. As the private property in question has been taken for public uses, and the provisions of the Rev. Sts. *c.* 39 are remedial, the court will give them a liberal construction. The controversy is between the Commonwealth and the wharf owners, and not between them and the rail road company ; and therefore, if those provisions are ambiguous, they are to be construed *contra proferentem.*

The word " taking " is used differently in different sections of *c.* 39 of the Rev. Sts., and therefore is not easily understood. By § 73, a rail road corporation may vary the location of its road, and file the location of the part of the road where the variations are made. Can a land owner, in such case, have damages twice?

The *St.* of 1836, *c.* 278, which prescribes the duty of county commissioners, when called upon to estimate damages sustained in cases like the present, speaks of " property taken or intended to be taken." This indicates that the filing of the location is the manifested intention to take, as distinguishable from the actual taking.

The case cited from 5 Met. 81, shows that the *completion* of the dam of the Middlesex Canal was the date from which the limitation of the time for applying for damages was to be computed. In the cases cited from 22 Pick. and 2 Met. it is true that the laying out of a road over land was held to entitle the land owner to damages. But a " laying out " is perfectly intelligible ; while a " taking " is not so.

Whatever may be the meaning of the word " taking," in the Rev. Sts. *c.* 39, § 58, the agreement of the parties, made on the 26th of February 1840, was a waiver, by the petitioners, of the statute notice of their location. Prior to that agreement, no land was " intended to be taken " beyond sixty feet. See *Fitch* v. *Stevens,* 4 Met. 428. *Stone* v. *City of Boston,* 2 Met. 228. The petitioners do not complain that the damages awarded by the commissioners are excessive ; and it is clear that the owners of the wharf are equitably entitled to receive them. And the court will not issue a writ of certiorari unless substantial injustice has been done. *Hancock* v. *City of Boston,* and *Inhabitants of Whately* v. *County Commissioners,* 1 Met. 123, 338. *Gleason* v. *Sloper,* 24 Pick. 181.

WILDE, J. This is a petition for a writ of certiorari to quash the proceedings of the county commissioners in awarding damages to Mary Harris and another, for their land, taken by the petitioners for their road, in pursuance of the Rev. Sts. *c.* 39. The error alleged is, that the application to the commissioners to estimate said damages was not made within three years after the land had been taken, as required by § 58. That section provides that " no application to the commissioners, to estimate damages for land or property hereafter to be taken, shall be sustained, unless made within three years from the time of taking the same," with an exception not applicable to the present case. The question is, whether the application was made within three years, as required by this provision ; and this depends on the true meaning of the words " *taking the same.*" The respondents' counsel contend, that the lands were not taken until the petitioners entered thereon and commenced making their road. On the other hand, it is contended, in

behalf of the petitioners, that the location of their road, and filing the same in the office of the county commissioners, was a *taking* within the true meaning of the statute.

The meaning of this section, without reference to other parts of the statute, is somewhat obscure; but with such reference, we think it sufficiently clear. By § 75, every rail road corpo ration is required, in all cases, to "file the location of their road, within one year, with the commissioners of each county through which the same passes, defining the courses, distances, and boundaries of such portion thereof as lies within each county respectively." And by § 60, it is provided, that after any rail road corporation "shall, by virtue of their charter, have *taken* any lands or other property, for the purpose of their rail road, the owner of any such land or other property may, at any time within three years from the time of taking the same, de- mand in writing of the treasurer or principal agent of the cor poration, a plan, or description in writing, of the land or other property so taken; and said corporation, within thirty days from the time of such demand, shall deliver to him such descrip- tion or plan; and all the rights of said corporation to enter upon or use said land or other property, except for making surveys, shall be suspended until they shall have so delivered such description or plan." By the taking of lands, as men- tioned in this latter section, we think the filing of the location of the road, as required by § 75, was intended, and not the mak- ing of the road; for if the latter had been intended, no plan or description of the road would seem to be necessary or useful. The commencement of making the road would be a sufficient notice of its location. So the suspension of the rights of the corporation to enter upon or use said land, except for making surveys, implies, we think, that a plan or description of the road may be required before the road is made, or is begun to be made, although it cannot be required until after the land is taken. And a similar inference may be drawn from § 61, which requires the corporation to give security for damages and costs, if requested; and if not given, their rights to enter upon or use the land, except for making surveys, are to be suspended, as before mentioned. It

is possible, though not probable, that surveys might be required after the rail road had been located, and the making of it had commenced; but it is not to be presumed that the legislature intended to provide for such a possibility.  By § 56, the corporation are made "liable to pay all damages occasioned by *laying out* and making and maintaining their road."  The words "laying out" in this section, and the words "*taken*" and "*taking*," in § 5₺, were intended, as it seems to us, to convey the same meaning.  The remaining part of the section which makes a distinction between an intention to take lands or materials necessary for the purpose of making or securing a rail road, and the actual taking, does not apply to land over which the road is laid, and has but little, if any, bearing on the present question.

Taking into consideration these various provisions, we are of opinion, that the time of limitation of the application for the assessment of damages, by § 58, must be understood to have commenced on the petitioners' filing the location of their road with the county commissioners.  This is equivalent to the laying out of highways and turnpike roads by the county commissioners.  It was by that act that the corporation acquired a right of way over the land.  They thereby took a title, and thus they took the land, according to the language of the statute.

It has, however, been argued, that by an agreement between the parties, the petitioners have varied, and thereby waived their location.  But we cannot so construe the agreement.  The petitioners agreed to extend their rail road sixty feet on and over the Harris Wharf.  For this extension the owners of the wharf agreed to relinquish their claim for damages.  But this does not imply an agreement, on the part of the petitioners, that they would not extend their rail road farther.  And it was not so understood by the parties; for the owners of the wharf objected to any farther extension, and claimed the right to recover compensation for any damages they might sustain thereby.  We are therefore of opinion, upon the whole matter, that the claim for damages was, before the application to the county commissioners, barred by the statute.  The notice given

to the petitioners, within the three years, that damages would be claimed is not material ; and the claim for damages ought not to have been allowed by the county commissioners.

*Petition granted.*